*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1150**

State of Minnesota,
Respondent,

vs.

Kelly Lee Trotter,
Appellant.

**Filed June 27, 2016
Affirmed
Peterson, Judge**

Chippewa County District Court
File No. 12-CR-14-575

Lori Swanson, Attorney General, Edwin W. Stockmeyer, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Bjorkman, Judge; and Rodenberg, Judge.

## UNPUBLISHED OPINION

**PETERSON**, Judge

In this appeal from convictions of criminal damage to property, first-degree burglary, and domestic assault, appellant argues that (1) his domestic-assault conviction must be reversed because the state failed to prove beyond a reasonable doubt that he

committed an act with intent to cause the complainant fear of immediate bodily harm or death; and (2) his burglary conviction must be reversed because the evidence does not prove that he entered the complainant's house and committed a crime inside. We affirm.

## FACTS

At 5:00 or 6:00 a.m. on September 28, 2014, J.W. woke up and went downstairs to get a drink. Before going back to bed, she checked to make sure that her front door was locked. As she lay back down, J.W. heard someone banging on her back door and yelling for her to answer the door. J.W. testified that she recognized the voice, but she did not say whose voice it was. J.W. ignored the person and fell asleep.

At about 8:00 a.m., J.W. and her boyfriend, D.B., were awakened by a loud noise. J.W.'s ex-boyfriend, appellant Kelly Lee Trotter, was standing at the foot of the bed, and he threw a cup of coffee and a large, heavy, metal ashtray in the direction of J.W. and D.B. Neither object hit J.W. or D.B., but the coffee stained parts of the bed and the curtain behind it, and the metal ashtray broke into two pieces when it hit the window.

Appellant jumped onto the bed and began wrestling with J.W. and D.B. D.B. described appellant as "jump[ing] in between" him and J.W. When J.W. managed to push appellant out of the bedroom, appellant told her that he loved her. The struggle resumed with appellant pushing J.W. and D.B. back into the bedroom. While appellant swung his arms, striking D.B. twice, J.W. climbed onto appellant's back and repeatedly hit him. D.B. got away and called 911. Appellant left on his own, leaving behind his wallet and his baseball cap.

2

Montevideo Police Officer George Ecklund responded to the 911 call. J.W. gave him the cap and the wallet, which contained appellant's identification. Ecklund did not see any physical injuries on J.W. or D.B. Ecklund photographed the damage to the front door, which appeared to have been kicked in. Ecklund went to the home where appellant was residing and arrested him. Appellant was charged with two counts of first-degree burglary, one count each of domestic assault and fifth-degree assault, and fifth-degree criminal damage to property.

J.W. testified at trial that appellant did not have consent to enter the house or her bedroom. She also testified that she and appellant had dated for ten months until they broke up in August 2014 because appellant believed that J.W. had been cheating on him, which J.W. denied.

The jury found appellant guilty of one count of first-degree burglary, domestic assault against J.W., and criminal damage to property and not guilty of the second count of first-degree burglary and fifth-degree assault against D.B. This appeal followed.

**D E C I S I O N**

**I.**

Appellant was convicted of domestic assault (fear), which occurs when a person commits an act against a "family or household member . . . with intent to cause fear . . . of immediate bodily harm or death." Minn. Stat. § 609.2242, subd. 1(1) (2014). Because domestic assault (fear) is a specific-intent crime, the state must prove that the defendant intended his actions to cause another to fear bodily harm. *See State v. Fleck*, 810 N.W.2d 303, 309 (Minn. 2012) (construing identical statutory language from Minn. Stat. § 609.02,

3

subd. 10(1) (2010)). "'Bodily harm' means any physical pain or injury . . . or any impairment of physical condition." Minn. Stat. 609.02, subd. 7 (2014).

Appellant argues that his domestic-assault conviction must be reversed because the state failed to prove beyond a reasonable doubt that he committed an act with intent to cause J.W. fear of immediate bodily harm or death. Appellant contends that "[t]he circumstances proved do not exclude the reasonable and rational hypothesis that [he] did not intend to cause [J.W.] fear of immediate harm and was only directing his actions toward [D.B.]." But, "with intent" means "that the actor *either* has a purpose to do the thing or cause the result specified *or* believes that the act, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(4) (2014) (emphasis added). Therefore, the state could prove that appellant acted "with intent" by proving that he believed that his acts would cause J.W. to fear immediate bodily harm.

"The intent element of a crime, because it involves a state of mind, is generally proved circumstantially." *State v. Davis,* 656 N.W.2d 900, 905 (Minn. App. 2003), *review denied* (Minn. May 20, 2003). Minnesota appellate courts employ a two-step process when reviewing a conviction based on circumstantial evidence. *State v. Andersen,* 784 N.W.2d 320, 329 (Minn. 2010). First, we identify the circumstances proved. *Id.* In doing so, we view the evidence in the light most favorable to the verdict. *See State v. Pratt,* 813 N.W.2d 868, 874 (Minn. 2012) (stating that the court considers the evidence "in the light most favorable to the verdict" when determining the circumstances proved). We defer to the fact-finder's acceptance and rejection of proof and to its credibility determinations. *Andersen,* 784 N.W.2d at 329; *see also State v. Hughes,* 749 N .W.2d 307, 312 (Minn.

4

2008) (stating that juries are "in the best position to weigh the credibility of the evidence and thus determine which witnesses to believe and how much weight to give their testimony").

Next, we examine the reasonable inferences that can be drawn from the circumstances proved. *Andersen,* 784 N.W.2d at 329. All of the circumstances proved must be consistent with guilt and inconsistent with any other rational hypothesis. *Id.* We do not defer to the fact-finder's choice between rational hypotheses. *Id.* at 329-30. However, a rational hypothesis negating guilt must be based on more than mere conjecture or speculation. *State v. Al–Naseer,* 788 N.W.2d 469, 480 (Minn. 2010); *Andersen,* 784 N.W.2d at 330.

In a specific-intent case, the defendant's intent, "as contrasted with the effect upon the victim, becomes the focal point for inquiry." *State v. Hough*, 585 N.W.2d 393, 396 (Minn. 1998) (quotation omitted). The reason for this focus is because "the legislature intended to forbid conduct that is done with the intent of causing fear in another of immediate bodily harm or death, without regard to whether the victim is aware of the conduct." *Id.* (quotation omitted). "The crime is in the act done with intent to cause fear, not in whether the intended result is achieved." *Id.* Accordingly, the effect of the assault on the victim may be introduced at trial as evidence of the defendant's intent, but it is not essential to support a conviction. *Id.*

In determining whether a defendant intended another to fear bodily harm, relevant circumstances include "the defendant's conduct, the character of the assault, and the events occurring before and after the crime." *In re Welfare of T.N.Y.*, 632 N.W.2d 765,

5

770 (Minn. App. 2001). The fact-finder may presume that the defendant intended the natural and probable consequences of his acts. *State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997).

The state proved the following circumstances: Appellant entered J.W.'s house by kicking in a locked door, and J.W. and D.B. awoke after hearing a loud noise to find appellant in their bedroom. Appellant threw coffee and a large, heavy, metal ashtray in the general direction of J.W. and D.B. Appellant threw the ashtray with enough force that it broke when it struck the window behind the bed, and J.W. ducked when appellant threw the ashtray. J.W. and D.B. were in bed together, and, about two months earlier, appellant had ended his relationship with J.W. because he believed that she was cheating on him. Appellant jumped onto the bed between J.W. and D.B. and began struggling with them. Appellant told J.W. that he loved her. When J.W. attempted to push appellant out of the bedroom, appellant pushed her and D.B. back into the bedroom.

Appellant's argument fails to recognize that, even if he was only directing his actions toward D.B., his actions occurred in J.W.'s presence. Considering the circumstances in their entirety and the natural and probable consequences of appellant's acts, it is not reasonable to infer that appellant did not believe that his acts would cause J.W. to fear immediate bodily harm. *See Hough*, 585 N.W.2d at 397 (rejecting argument that evidence was insufficient to sustain convictions of multiple counts of second-degree assault (fear) when defendant only intended to scare one of home's occupants and was unaware that others were present in home because, "when an assailant fires numerous shots from a semiautomatic weapon into a home, it may be inferred that the assailant

6

intended to cause fear of immediate bodily harm or death to those within the home," and because "it was a natural and probable consequence that [defendant's] actions would endanger people other than [his intended victim]"). We therefore conclude that the evidence was sufficient to prove beyond a reasonable doubt that appellant committed an act with intent to cause J.W. fear of immediate bodily harm.

## II.

Appellant was convicted of first-degree burglary under Minn. Stat. § 609.582, subd. 1 (2014), which states:

> Whoever enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building . . . commits burglary in the first degree . . . if: (a) the building is a dwelling and another person, not an accomplice, is present in it when the burglar enters or at any time while the burglar is in the building.

The state's theory of the case was that the predicate offenses for the burglary charges were domestic assault against J.W. and fifth-degree assault against D.B.

Appellant argues that, because the evidence was insufficient to support the domestic-assault conviction, it was also insufficient to support the burglary conviction because the jury found appellant not guilty of fifth-degree assault. The district court instructed the jury that appellant was guilty of first-degree burglary if he committed any of the following four crimes while in J.W.'s home: (1) domestic assault (harm); (2) domestic assault (fear); (3) fifth-degree assault (harm); or (4) fifth-degree assault (fear).

Because we have concluded that the evidence was sufficient to prove that appellant committed domestic assault (fear), we also conclude that the evidence was sufficient to

7

prove that appellant committed first-degree burglary.  The evidence proved that appellant entered J.W.'s home when J.W. and D.B. were present and, while in the home, committed domestic assault.

**Affirmed**.